16TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. MARY

STATE OF LOUISIANA

NO.                                                          DIVISION " "

DIAMOND SERVICES CORPORATION

VERSUS

COBBS, ALLEN, & HALL OF LOUISIANA, INC.; DUAL CORPORATE RISKS, LTD.;
LLOYD'S SYNDICATE NVA 2007; LLOYD'S SYNDICATE SKD 1897; LLOYD'S
SYNDICATE 4711 ASP; AND LLOYD'S SYNDICATE 1200 AMA

FILED: _____                    _____
                                                        DEPUTY CLERK

### PETITION FOR DECLARATORY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes plaintiff, Diamond
Services Corporation, petitioning for a declaratory judgment against defendants, Cobbs,
Allen, & Hall of Louisiana, Inc.; Dual Corporate Risks, Ltd.; Lloyd's Syndicate NVA 2007;
Lloyd's Syndicate SKD 1897; Lloyd's Syndicate 4711 ASP; and Lloyd's Syndicate 1200
AMA. In support of this allegation, Plaintiff Diamond Services Corporation alleges as
follows:

### INTRODUCTION

1.      This Petition for Declaratory Judgment is brought under Louisiana Code of
Civil Procedure Article 1871.

2.      This Petition concerns the marine insurance policy (attached as Exhibit 1 to
this petition and incorporated herein by reference) that Defendants underwrote and
issued to plaintiff Diamond Services Corporation (hereinafter "Diamond").

3.      This insurance policy established that Defendants would calculate
Diamond's annual policy premium retrospectively based on Diamond's "aggregate %
utilisation" of its vessels. The policy does not define "aggregate % utilisation" or dictate
how Defendants would calculate it.

4. Defendants sent Diamond a bill for $660,000 in additional insurance premiums based on Diamond's "aggregate % utilisation" of 260% of its fleet. Diamond interprets the policy to indicate that "aggregate % utilisation" could never exceed 100% of its fleet.

5. Diamond seeks a declaration from this Court that the method of calculating Diamond's insurance premium (the "aggregate % utilisation") is ambiguous, and thus should be construed against the drafter and in favor of plaintiff-policyholder Diamond.

### Parties

6. Diamond is a Louisiana Corporation with its domicile address and principal office address in St. Mary Parish at 503 Degravelle Road, Amelia, LA 70340. Diamond owns and operates vessels that work in the fields of marine transportation, decommissioning, pipelines, dredging, and pile driving in the Gulf of Mexico. Diamond purchased a Protection and Indemnity (P & I) policy via Cobbs Allen to insure its vessels. This policy was in effect from March 10, 2018 to March 10, 2019.

7. Defendant Cobbs, Allen, & Hall of Louisiana, Inc. ("Cobbs Allen") is a Louisiana Corporation with its domicile address in East Baton Rouge Parish at 3867 Plaza Tower Dr., 1st Floor, Baton Rouge, LA 70816. Cobbs Allen is the insurance agent that sold the policy at issue to Diamond.

8. Defendant Dual Corporate Risk, Ltd. ("Dual Aqua") is a Private Limited Company organized under the law of England and Wales, with its registered office address at One Creechurch Place, London, United Kingdom, EC3A 5AF. Dual Aqua, on behalf of the Lloyd's of London syndicates named as co-defendants, underwrote Diamond's policy.

9. On information and belief, Lloyd's Syndicate NVA 2007, Lloyd's Syndicate SKD 1897, Lloyd's Syndicate 4711 ASP, and Lloyd's Syndicate 1200 AMA ("Lloyd's") are foreign insurers engaged in the reinsurance business in Louisiana through their relationship with Dual Aqua and Cobbs Allen. Lloyd's underwrote Dual Aqua's policy that Cobbs Allen issued to Diamond.

2

## Jurisdiction and Venue

10.     This Court has general subject matter jurisdiction over the facts alleged in this Petition because District Courts have original general subject matter jurisdiction. La. Const. Ann. art. V, § 16.

11.     This court has personal jurisdiction over all Defendants, and venue is proper in St. Mary Parish.

## Personal Jurisdiction

12.     This Court has general personal jurisdiction over Cobbs Allen because Cobbs Allen is a Louisiana Business Corporation with its registered office in Baton Rouge, Louisiana.  Upon information and belief, Cobbs Allen also has offices in Bossier City, Louisiana.

13.     This Court has specific personal jurisdiction over Dual Aqua under Louisiana's long-arm statute. La. Rev. Stat. Ann. § 13:3201. The Louisiana long arm statute authorizes this court to exercise personal jurisdiction over any defendant who, among other things, "transact[s] any business in this state [or] contract[s] to supply services . . . in this state." La. Rev. Stat. Ann. § 13:3201(1)-(2).

14.     Here, based on information and belief, Dual Aqua is a surplus lines insurer that contracted with Cobbs Allen—a Louisiana Business Corporation—to sell its insurance policies in Louisiana. As such, on information and belief, Dual Aqua intentionally transacted business in Louisiana. Furthermore, Dual Aqua underwrote an insurance policy to Diamond, a Louisiana Business Corporation domiciled in St. Mary Parish, Louisiana. Underwriting an insurance policy to a Louisiana corporation establishes enough "minimum contacts" with this state that it could very foreseeably be haled into a Louisiana court. *See International Shoe v. State of Washington*, 326 U.S. 310 (1945).

15.     Exercising personal jurisdiction over Dual Aqua in St. Mary Parish is consistent with protecting Dual Aqua's due process rights to "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). On information and

3

belief, Dual Aqua already has substantial contacts in Louisiana, having worked with Cobbs Allen to sell insurance policies in this state. In contrast, Diamond has no such contacts in England or Wales. Dual Aqua underwrote the policy, but Diamond only ever interfaced with Cobbs Allen—a Louisiana business corporation. Dual Aqua has substantial contacts in Louisiana and has intentionally sought business from Louisiana domiciliaries. Thus, Dual Aqua has subjected itself to the specific personal jurisdiction of this court.

16. This Court has specific personal jurisdiction over Lloyd's for the exact same reasons it has jurisdiction over Dual Aqua. Like Dual Aqua, the Lloyd's syndicates subjected themselves to Louisiana personal jurisdiction when they agreed to underwrite an insurance policy issued by a Louisiana insurance agent to a Louisiana business corporation. As such, subjecting them to Louisiana personal jurisdiction is just as consistent with preserving their due process rights as it is with preserving Dual Aqua's.

### Venue

17. This Court is the proper venue for this action as to all defendants under La. Code Civ. Proc. Art. 76 (as an action on an insurance contract) and under La. Code Civ. Proc. Art. 76.1 (as an action on a contract).

18. First, in an action on an insurance contract, venue is proper where the insured is domiciled. La. Code Civ. Proc. Art. 76. This is an action on an insurance policy, and the insured—Diamond—is domiciled in St. Mary Parish. As such, venue is proper in St. Mary Parish.

19. Second, this is an action on a contract. Under Louisiana law, an insurance policy is a contract. *See, i.e., Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07, 7); 956 So.2d 583, 588–89. For an action on a contract, venue is proper either (1) wherever the contract was executed, or (2) wherever any work was or was to be performed. La. Code Civ. Proc. Art. 76.1. Here, Diamond executed its insurance policy at its principal office in St. Mary Parish. Furthermore, the insurance contract required

4

Defendants to render performance in St. Mary Parish by paying out insurance claims to Diamond. Thus, venue is proper in St. Mary Parish.

## Factual Background

20. This Petition for Declaratory Judgment arises out of a marine P&I (Protection and Indemnity) insurance policy that Dual Aqua and Lloyd's issued to Diamond through their insurance agent, Cobbs Allen. Exhibit 1, p. 1. The policy insured Diamond's fleet of vessels for one year, from March 10, 2018 to March 10, 2019. *Id.*

joint nkilling agent

21. Diamond paid Defendants a $250,000 deposit premium for this policy. *Id.* Defendants would calculate the actual premium retrospectively, at the end of the policy. *Id.* at p.3. Defendants would either owe a balance or receive a refund. The written policy says that Defendants would calculate the adjustment by multiplying by $3,500 the "aggregate % utilisation of all vessels" over the course of the yearlong policy *Id.*

22. After the policy expired, Defendants audited Diamond to calculate the adjustment of its policy. They then sent Diamond a $910,000 bill for its policy premium for that year. Exhibit 2, p. 3. Understandably, Diamond was astounded to learn that it was being billed for somehow utilizing 260% percent of its fleet. *Id.*

23. Defendants billed Diamond for a premium of $910,000 for last year (from March 10, 2018 to March 10, 2019). *Id.* Less the prepaid $250,000 deductible, Defendants claim Diamond is still on the hook for $660,000. *Id.*

24. Dual Aqua sent Diamond an August 29, 2019 demand letter under the Louisiana Open Accounts Statute (La. Rev. Stat. 9:2781) to demand payment of the $660,000 insurance bill.

## Claims for Declaratory Relief

25. It is axiomatic in Louisiana law that an ambiguous phrase or word in an insurance policy must be construed against the drafter, and in favor of the policyholder. *See, e.g., Cadwallader v. Allstate Ins. Co.,* 2002-1637 (La. 6/27/03, 4); 848 So.2d 577, 580. For this rule to apply, the insurance policy must be susceptible to two or more reasonable interpretations. *Id.* (citing *Carrier v. Reliance Ins. Co.,* 99–2573, p. 11 (La.

5

4/11/00); 759 So.2d 37, 43). Louisiana law interprets words or phrases by looking to their "plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* (citing La. Civ Code art. 2047; *Peterson v. Schimek*, 98–1712, p. 5 (La. 3/2/99); 729 So.2d 1024, 1028–29).

26.     Here, the phrase "aggregate % utilisation" is ambiguous at best and nonsensical at worst. On information and belief, it is not a term of art in the insurance industry, so it has not acquired a technical meaning. Nor does it have a "plain, ordinary and generally prevailing meaning." *See Cadwallader, supra.* Despite the term's lack of established or clear meaning, Defendants offered absolutely no context and no explanation in the policy.

27.     The policy never defined "aggregate % utilisation." The policy included a table where it itemized the premiums for each vessel in Diamond's fleet. *Id.* at 17. But the premium for each vessel, instead of indicating a dollar value or a rate, was simply said to be "included." *Id.* Simply stating that the vessel's premium is "included" in the policy does not help Diamond divine Defendants' definition of "aggregate % utilisation."

28.     Diamond interpreted "aggregate % utilisation" to mean a simple ratio of the actual time that the vessels spent at sea, relative to the total amount of time that the vessels could have possibly spent at sea. Diamond believed, based on what little language existed in the policy and on what few statements Defendants made about the policy, that "aggregate % utilisation" would never be more than 100%, and would frequently be less than 100%. After all, the word "aggregate," in its plain and ordinary meaning, means "whole." Diamond believed that its "aggregate % utilisation" would only reach 100% if every vessel was being utilized every second of every day for the whole year.

29.     Contrast that with Defendants' interpretation, which, on information and belief, relied on another definition of aggregate: the sum of various disparate elements. Defendants, on information and belief, calculated "aggregate % utilisation" as the sum of the numerical percentages that each ship in Diamond's fleet had been utilized over the course of that year.

6

30.     This actuarial chaos is due to Defendants' use of the ambiguous phrase "aggregate % utilisation." Despite the fact that this phrase is not a term of art in the industry, Defendants offered no explanation of what it meant or how it would be calculated. Diamond logically concluded that the term indicated a simple ratio: the percentage of time that its vessels spent on the water, relative to the amount of time that they could have possibly spent on the water.

31.     Diamond's interpretation is reasonable and consistent with the plain, ordinary meaning of the word "aggregate," meaning a "whole sum or amount." As such, "aggregate % utilisation of all vessels" should mean the overall percentage Diamond utilized its vessels over the relevant year, taken as a whole.

32.     Defendants' interpretation is strained and requires a much less plain and much less ordinary application of the word "aggregate" than Diamond's interpretation. Nevertheless, even if Defendants' interpretation was reasonable, ambiguous clauses in insurance agreements must be construed in favor of the policyholder. *Cadwallader, supra.*

33.     Ultimately, Defendants issued a policy to Diamond with a clause that is not standard in any form of insurance agreement and that was ambiguously worded. They used that ambiguously worded clause to bill Diamond for a colossal insurance premium. But the clause's inherent ambiguity undermines Defendants' position. Wherever a clause in an insurance agreement is ambiguous, it must be construed in favor of the policy holder.

### Prayer for Relief

34.     WHEREFORE, Diamond prays that this court grant the following relief:

a.  A declaration that the insurance policy that Defendants issued to Diamond is ambiguous;

b.  A declaration that the clause "aggregate % utilisation of all vessels" means a simple ratio of the percentage of time that each vessel spent on the water,

7

relative to the amount of time that they could have possibly spent on the water;

c. A declaration that Diamond does not owe $660,000 in premiums to Defendants;

d. All further necessary and proper relief to which Diamond may be justly entitled to receive.

Respectfully submitted:

ALAN G. BRACKETT (#14094)
MARK E. HANNA (#19336)
TREVOR M. CUTAIAR (#33082)
MOULEDOUX, BLAND, LEGRAND &
BRACKETT, LLC
701 Poydras Street, Suite 4250
New Orleans, Louisiana 70139
Telephone:   (504) 595-3000
Fax:            (504) 522-2121
E-mail:        mhanna@mblb.com

*Attorneys for Diamond Services Corporation*

**Cobbs, Allen, & Hall of Louisiana, Inc.**
Through its registered agent
Registered Agent Solutions
3867 Plaza Tower Dr., 1st Floor,
Baton Rouge, LA 70816,

**Dual Corporate Risk, Ltd.**
**Via the Louisiana Long Arm Statute, La. R.S. 13:3204**
One Creechurch Place,
London, United Kingdom, EC3A 5AF

**Underwriters at Lloyd's London**
**Lloyd's Syndicate NVA 2007**
Through its registered agent, the Louisiana Secretary of State
8585 Archives Ave,
Baton Rouge, LA 70809

**Underwriters at Lloyd's London**
**Lloyd's Syndicate SKD 1897**
Through its registered agent, the Louisiana Secretary of State
8585 Archives Ave,
Baton Rouge, LA 70809

8

**Underwriters at Lloyd's London**
**Lloyd's Syndicate 4711 ASP**
Through its registered agent, the Louisiana Secretary of State
8585 Archives Ave,
Baton Rouge, LA 70809

**Underwriters at Lloyd's London**
**Lloyd's Syndicate N1200 AMA**
Through its registered agent, the Louisiana Secretary of State
8585 Archives Ave,
Baton Rouge, LA 70809

## Schedule of Exhibits

Exhibit 1     Diamond Services Corporation P & I Policy, effective 10th March 2018 to 10th March 2019

Exhibit 2     Addendum to Confirmation of Reinsurance, dated 29th April 2019.


**RKH Specialty**

---

## RISK DETAILS

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | B0180MA1805141 |
| **TYPE:** | LIABILITY INSURANCE |
| **INSURED:** | DIAMOND SERVICES CORPORATION |
| **MAILING ADDRESS:** | PO Box 1286<br>Morgan City, Louisiana 70381<br>United States of America |
| **PERIOD:** | With effect from 10th March, 2018 12.01 am, local standard time, at the address of the Insured to 10th March, 2019 12.01 am, local standard time, at the address of the Insured. |
| **VESSEL(S):** | As per the attached schedule. |
| **INTEREST:** | Protection and Indemnity. |
| **SUM(S) INSURED/ LIMIT(S):** | Limit: USD 1,000,000 any one accident or occurrence, combined single limit. |
| **DEDUCTIBLE(S) / EXCESSES:** | Deductible: USD 25,000 any one accident or occurrence. |
| **SITUATION:** | Worldwide. |



EXHIBIT
**1**
tabbies

DUAL
Dual Corporate Risks


**CONDITIONS:** SP 23 Form (Rev 1/56) as attached.

In respect of owned vessels as detailed herein coverage includes the four-fourths running down clause as per 4. of the SP23 form.

Removal of wreck 7. is amended to read as per the attached Removal of Wreck Endorsement.

The following clause is deleted in it entirety:

"It is expressly understood and agreed if and when the Assured under this policy has any interest other than as a shipowner in the vessel or vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled."

Pilotage and Towage Clause as attached.
Reactivation Clause as attached.
Owner's Limitation Clause as attached.
Contractual Liability Clause as attached.
Automatic Acquisition Clause as attached.
Seepage And Pollution Endorsement CGU00B (amended) with c. and d. to read as follows:

    c. the occurrence was first discovered by the insured within ninety (90) days of such first commencement and
    d. written notification of the occurrence was first received from the insured by us within one hundred and twenty (120) days of the insured's first discovery of the occurrence and

### GENERAL CONDITIONS APPLICABLE TO ALL SECTIONS

Where required it is agreed that this contract may apply as a Reinsurance of Local Companies in accordance with the terms of the Local Reinsurance Clause as attached.
In Rem Endorsement as attached.
Additional Insured Endorsement CGU00M as attached.
Waiver of Subrogation Endorsement CGU00L as attached.
Institute Radioactive Contamination, Chemical, Biological, Bio-chemical and Electromagnetic Weapons Exclusion Clause 10th November, 2003 (Cl.370).
U.S.A. and Canada Endorsement for the Institute Radioactive Contamination, Chemical, Biological, Bio-chemical and Electromagnetic Weapons Exclusion Clause 29th January, 2004 (USCAN B) as attached.
Institute Cyber Attack Exclusion Clause 10th November, 2003 (Cl.380).
Additional / Return Premium Clause as attached.
Deferred Payment of Premium Clause as attached.
Sanction Limitation and Exclusion Clause JL2010/005 as attached.
Third Party Administrator Condon Claims Management Ltd.
Joint Liability Committee War and Terrorism Clause JL 2002/002 as attached.
Notification of Claims to Condon Claims Management Limited.
Including Insured, Interest of Mortgagees (Notice of Assignment in respect thereof) and Loss Payees if and in terms as may be required.
Institute Service of Suit Clause 1st November, 1992 (Cl.355) (Amended) as attached.
IUA 09-054 (FATCA) as attached.
LMA5219 U.S. Terrorism Risk Insurance Act of 2002 as amended Not Purchased Clause as attached.


Dual Corporate Risks



| | |
|---|---|
| **EXPRESS WARRANTIES:** | None, other than any explicit or implied Warranties as may exist within the referenced and/or attached Clauses and/or Wordings. |
| | Failure to comply with any Warranty may result in coverage being cancelled from date of breach. |
| **CONDITIONS PRECEDENT:** | None, other than may exist within the referenced and/or attached Clauses and/or Wordings. |
| **SUBJECTIVITIES:** | None, other than may exist within the referenced and/or attached Clauses and/or Wordings. |
| **CHOICE OF LAW & JURISDICTION:** | This insurance shall be governed by and construed in accordance with the law of the State of Louisiana, United States of America and each party agrees to submit to the exclusive Jurisdiction of the Courts of the State of Louisiana, United States of America. |
| **PREMIUM / RATE:** | Minimum & Deposit Premium USD :          adjustable at expiry as follows: |
| | The aggregate % utilisation of all vessels will be multiplied by USD          (based upon current 66%) |
| | TRIPRA: Declined. TRIPRA Premium: Not Applicable. |
| **PREMIUM PAYMENT TERMS:** | Premium Payment Clause LSW3001 as attached. |
| **TAXES PAYABLE BY INSURED AND ADMINISTERED BY INSURERS:** | None. |
| **RECORDING, TRANSMITTING & STORING INFORMATION:** | Where RKH Specialty maintains risk and claim data/information/documents, RKH Specialty may hold such data/information/documents electronically. |
| **INSURER CONTRACT DOCUMENTATION:** | This document details the contract terms entered into by the insurer(s), and constitutes the contract document. No further contractual documentation will be issued. |
| | Any further documentation changing this contract, agreed in accordance with the contract change provisions set out in this contract, shall form the evidence of such change. |

*What is this?*



Dual Corporate Risks


# PROTECTION & INDEMNITY

# SP23 (Revised 1/56)

Amount Insured: ...................................................
Premium: ...................................................
Rate: ...................................................

Policy No.

_____
_____

_____
_____

hereinafter called the

Assured.

Loss, if any, payable to Assured_____

_____ or
order.

In the sum of _____
_____

At and from the _____ day of_____
to _____ day of_____

against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth , in respect of the vessel called the
................................................ or by whatsoever other names the said vessel is or shall be named or called.

In consideration of the stipulations herein named and of ........................................... being premium at the rate of .........................................

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

| | | |
|---|---|---|
| Loss of Life, injury and illness | (1) | Liability for loss of life of , or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others. |
| | | Protection hereunder for loss of life or personal injury arising in connection with the handling of cargo of the vessel named herein shall commence from the time of receipt by the Assured of the cargo on dock or wharf or on craft alongside the said vessel for loading thereon and shall continue until delivery thereof from dock or wharf or discharge or until discharge from the said vessel on to another vessel or craft. |
| Hospital, medical, or other expenses | (2) | Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person. Liability hereunder shall also include burial expenses not exceeding Two Hundred ($200) Dollars, when necessarily and reasonably incurred by the Assured for the burial of any seaman of said vessel. |
| Repatriation expenses | (3) | Liability for repatriation expenses of any member of the crew of the vessel named herein, necessarily and reasonably incurred, under statutory obligation, excepting such expenses as arise out of or ensue from the termination of any agreement in accordance with the terms thereof, or by mutual consent, or by sale of the said vessel, or by other act of the Assured. Wages shall be included in such expenses when payable under statutory obligation, during unemployment due to the wreck or loss of the said vessel. |
| Damage to other vessel or property on board caused by collision | (4) | Liability for loss of, or damage to, any other vessel or craft, or to the freight thereof, or property on such other vessel or craft, caused by collision with the vessel named herein, insofar as such liability would not be covered by full insurance under the ............................................................................................................form (including the four-fourths running-down clause). |
| Principle of cross-liabilities to prevail | (a) | Claims under this clause shall be settled on the principle of cross-liabilities to the same extent only as provided in the running-down clause above mentioned. |
| | (b) | Claims under this clause shall be divided among the several classes of claims enumerated in this policy and each class shall be subject to the deduction and special conditions applicable in respect of such class. |
| | (c) | Notwithstanding the foregoing, if any one or more of the various liabilities arising from such collision has been compromised, settled or adjusted without the written consent of the Assurer, the Assurer shall be relieved of liability for any and all claims under this clause. |



Dual Corporate Risks



| Damage to other vessel or property on board not caused by collision. | (5) | Liability for loss of or damage to any other vessel or craft, or to a property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the assured. |
|---|---|---|

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance application on the property.

**Damage to docks, piers, etc.** (6) Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever, except another vessel or craft, or property on another vessel or craft.

Where there would be a valid claim hereunder but for the fact that the damaged property belongs to the Assured, the Assurer shall be liable as if such damaged property belonged to another, but only for the excess over any amount recoverable under any other insurance applicable on the property.

**Removal of wreck** (7) Liability for cost or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law, provided, however, that :

(a) There shall be deducted from such claim for cost or expenses, the value of any salvage from or which might have been recovered from the wreck, inuring, or which might have inured, to the benefit of the Assured.

(b) The Assurer shall not be liable for such costs or expenses which would be covered by full insurance under the ............................................................................ or claims arising out of hostilities or war-like operations, whether before or after declaration of war.

**Cargo** (8) Liability for loss of, or damage to, or in connection with cargo or other property, excluding mail and parcel post, including baggage and personal effects of passengers, to be carried, carried, or which has been carried on board the vessel named herein:

Provided, however, that no liability shall exist under this provision for:

**Specie, bullion, precious stones, etc.** (a) Loss, damage or expense arising out of or in connection with the custody, care, carriage or delivery of specie, bullion, precious stones, precious metals, jewelry, silks, furs, bank notes, bonds or other negotiable documents or similar valuable property, unless specially agreed to and accepted for transportation under a form of contract approved, in writing, by the Assurer.

**Refrigeration** (b) Loss of, or damage to, or in connection with cargo requiring refrigeration unless the space, apparatus and means used for the care, custody, and carriage thereof have been surveyed by a classification surveyor or other competent disinterested surveyor under working conditions before the commencement of each voyage and found in all respects fit, and unless accepted for transportation under a form of contract approved, in writing, by the Assurer.

**Passengers' effects** (c) Loss, damage, or expense in connection with any passenger's baggage or personal effects, unless the form of ticket issued to the passenger shall have been approved, in writing, by the Assurer.

**Stowage in improper places** (d) Loss, damage, or expense arising from stowage of underdeck cargo on deck or stowage of cargo in spaces not suitable for its carriage, unless the Assured shall show that every reasonable precaution has been taken by him to prevent such improper stowage.

**Deviation** (e) Loss, damage, or expense arising from any deviation, or proposed deviation, not authorized by the contract of affreightment, known to the Assured in time to insure specifically the liability therefor, unless notice thereof is given to the Assurer and the Assurer agrees, in writing, that such insurance is unnecessary.

**Freight on cargo short delivered** (f) Freight on cargo short delivered, whether or not prepaid or whether or not included in the claim and paid by the Assured.

**Misdescription of Goods** (g) Loss, damage, or expense arising out of or as a result of the issuance of Bills of Lading which, to the knowledge of the Assured, improperly describe the goods or their containers as to condition or quantity.

**Failure to surrender Bill of Lading** (h) Loss, damage, or expense arising out of delivery of cargo without surrender of Bill of Lading.

And provided further that

(aa) Liability hereunder shall in no event exceed that which would be imposed by law in the absence of contract.

(bb) Liability hereunder shall be limited to such as would exist if the Charter Party, Bill of Lading or Contract of Affreightment contained the following clause (in substitution for the clause commonly known as the Jason Clause):

"In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the shipowner is not responsible, by statute or contract or otherwise, the shippers, consignees or owners of the cargo shall contribute with the shipowner in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo"

When cargo is carried by the vessel named herein under a bill of lading or similar document of title subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as is imposed by said Act, and if the Assured or the vessel named herein assumes any greater liability or obligation than the minimum liabilities and obligations imposed by said Act, such greater liability or obligation shall not be covered hereunder.

Dual Corporate Risks



| | | |
|---|---|---|
| Protective clauses required in contract of affreighment | | When cargo is carried by the vessel named herein under a charter party, bill of lading or contract of affreightment not subject or made subject to the Carriage of Goods by Sea Act, April 16, 1936, liability hereunder shall be limited to such as would exist if said charter party, bill of lading, or contract of affreightment contained the following clauses: a clause limiting the Assured's liability for total loss or damage to goods shipped to Two Hundred and Fifty ($250) Dollars per package, or in case of goods not shipped in packages, per customary freight unit, and providing for pro rata adjustment on such basis for partial loss or damage; a clause exempting the Assured and the vessel named herein from liability for losses arising from unseaworthiness, even though existing at the beginning of the voyage, provided that due diligence shall have been exercised to make the vessel seaworthy and properly manned, equipped, and supplied; a clause providing that the carrier shall not be liable for claims in respect of cargo unless notice of claim is given within the time limited in such Bill of Lading and suit is brought thereon within the limited time prescribed therein; and such other protective clauses as are commonly in use in the particular trade; provided the incorporation of such clauses is not contrary to law. |
| | | The foregoing provisions as to the contents of the Bill of Lading and the limitation of the Assurer's liability may, however, be waived or altered by the Assurers on terms agreed, in writing. |
| Assured's own cargo | | (cc) Where cargo on board the vessel named herein is the property of the Assured, such cargo shall be deemed to be carried under a contract containing the protective clauses described in the preceding paragraph, and such cargo shall be deemed to be fully insured under the usual form of cargo policy, and in case of loss thereof or damage thereto the Assured shall be insured hereunder in respect of such loss or damage only to the extent that they would have been covered if said cargo had belonged to another, but only in the event and to the extent that the loss or damage would not be recoverable under a cargo policy as hereinbefore specified. |
| Cotton Bills of Lading | | (dd) The Assured's liability for claims under Custody Cotton Bills of Lading issued under the conditions laid down by the Liverpool Bill of Lading Conference Committee, is covered subject to previous notice of contract and payment of an extra premium of two (2¢) cents per ton gross register per voyage, but such additional premium shall be waived provided every bale is re-marked at a port of shipment on another portion of the bale. |
| Land transportation | | (ee) No liability shall exist hereunder for any loss, damage or expense in respect of cargo or other property being transported on land or on another vessel. |
| | | No liability shall exist hereunder for any loss, damage or expense in respect of cargo before loading on or after discharge from the vessel named herein caused by flood, tide, windstorm, earthquake, fire, explosion, heat, cold, deterioration, collapse of wharf, leaky shed, theft or pilferage unless such loss, damage or expense is caused directly by the vessel named herein, her master, officers or crew. |
| Customs, immigration or other fines or penalties | (9) | Liability for fines and penalties, including expenses necessarily and reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or of any State thereof, or of any foreign country; provided, however, that the Assurer shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws. |
| Mutiny or other misconduct | (10) | Expenses incurred in resisting any unfounded claim by the master or crew or other persons employed on the vessel named herein, or in prosecuting such persons in case of mutiny or other misconduct. |
| Extraordinary expenses in case of quarantine, etc. | (11) | Liability for extraordinary expenses resulting from outbreak of plague or other contagious disease, including such expenses incurred for disinfection of the vessel named herein or persons on board, or for quarantine, but excluding the ordinary expenses of loading and/or discharging, and the wages and provisions of crew and passengers; each claim under this provision is subject to a deduction of Two Hundred ($200) Dollars. It is provided further, however, that if the vessel named herein be ordered to proceed to a port when it is or should be known that calling there will subject the vessel to the extraordinary expenses above mentioned, or to quarantine or disinfection there or elsewhere, the Assurer shall be under no obligation to indemnify the Assured for any such expenses. |
| Deviation for purpose of landing injured or ill | (12) | Net loss due to deviation incurred solely for the purpose of landing an injured or sick seaman in respect of port charges incurred, insurance, bunkers, stores, and provisions consumed as a result of the deviation. |
| Cargo's proportion of general average | (13) | Liability for, or loss of, cargo's proportion of general average, including special charges, in so far as the Assured cannot recover same from any other source; subject however, to the exclusions of Section (8) and provided, that if the Charter Party, Bill of Lading or Contract of Affreightment does not contain the quoted clause under Section 8 (bb) the Assurer's liability hereunder shall be limited to such as would exist if such clause were contained therein. |
| Costs and Charges | (14) | Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided. |

**GENERAL CONDITIONS AND/OR LIMITATIONS**

| | |
|---|---|
| Prompt notice of claim | Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences. |



Dual Corporate Risks



| **Settlement of claims** | The Assured shall not make any admission of liability, either before or after any occurrence which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings in respect of any occurrences for which the Assurer is liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made. |
|---|---|
| **Assured to assist with evidence in defense, etc.** | Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as hereinbefore provided. |
| **Law costs** | The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible. The cost and expense of prosecuting any claim in which the Assurer shall have an interest by subrogation or otherwise, shall be divided between the Assured and the Assurer, proportionately to the amounts which they would be entitled to receive respectively, if the suit should be successful. |
| | The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgment or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements. |
| **Subrogation** | The Assurer shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall, upon the request of the Assurer, execute all documents necessary to secure to the Assurer such rights. |
| | The Assurer shall be entitled to take credit for any profit accruing to the Assured by reason of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover for their own account from third parties any damage that may be provable by reason of such negligence or wrongful act. |
| **Cover elsewhere** | Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the Assurer, under this policy, there shall be no contribution by the Assurer on the basis of double insurance or otherwise. |
| **Assignments** | No claim or demand against the Assurer under this policy shall be assigned or transferred, and no person, excepting a legally appointed receiver of the property of the Assured, shall acquire any right against the Assurer by virtue of this insurance without the expressed consent of the Assurer. |
| **Actions against Assurers** | No action shall lie against the Assurer for the recovery of any loss sustained by the Assured unless such action is brought against the Assurer within one year after the final judgment or decree is entered in the litigation against the Assured, or in case the claim against the Assurer accrues without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim. |
| **Time limitation** | The Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured. |
| **Lay-up returns** | At the expiration of this policy, the Assurer is to return for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port; or for each thirty (30) consecutive days during the term of this insurance the vessel may be laid up in a safe port without loading and/or discharging and without crew or cargo on board, provided the Assured give written notice to the Assurer as soon as practicable after the commencement and the termination of such lay-up period. |

**Cancellation provisions:**

(a) If the vessel named herein should be sold or requisitioned and this policy be canceled and surrendered, the Assurer to return for each thirty (30) consecutive days of the unexpired term of this insurance.

(b) In the event of non-payment of premium within sixty (60) days after attachment, this policy may be canceled by the Assurer upon five (5) days' written notice being given the Assured.

(c) In the event that Sections 182 to 189, both inclusive, of U.S. Code, Title 46, or any other existing law or laws determining or limiting liability of shipowners and carriers, or any of them, shall, while this policy is in force, be modified, amended or repealed, or the liabilities of shipowners or carriers be increased in any respect by legislative enactment, the Assurer shall have the right to cancel said insurance upon giving _____ days' written notice of their intention so to do, and in the event of such cancellation, make return of premium upon a pro rata daily basis.

**DUAL**

Dual Corporate Risks

 
<u>Notwithstanding anything to the contrary contained in this policy, no liability attaches to the Assurer:</u>

For any loss, damage, or expense which would be payable under the terms of the        form of policy on hull and machinery, etc., if the vessel were fully covered by such insurance sufficient in amount to pay such loss, damage, or expense.

For any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment, or the consequence thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability therefor is based on negligence or otherwise, and whether before or after a declaration of war.

For any loss, damage, or expense arising from the cancellation or breach of any charter, bad debts, fraud of agents, insolvency, loss of freight hire or demurrage, or as a result of the breach of any undertaking to load any cargo, or in respect of the vessel named herein engaging in any unlawful trade or performing any unlawful act, with the knowledge of the Assured.

For any loss, damage, expense, or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the vessel named herein arising as a result of towing.

For any claim for loss of life or personal injury in relation to the handling of cargo where such claim arises under a contract of indemnity between the Assured and his sub-contractor.

It is expressly understood and agreed if and when the Assured under this policy has any interest other than as a shipowner in the vessel or vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled.

Unless otherwise agreed by endorsement to this policy, liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract.

Liability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured.

 

## REMOVAL OF WRECK ENDORSEMENT

Liability for costs or expenses arising out of the removal of the wreck of any vessel (named herein) and property thereon, following fortuitous loss or damage, whether or not such raising, removal or destruction is required by law, statute or contract, provided that there shall be deducted from such claim for costs or expenses, the value of any salvage from or which might have been recovered from wreck, inuring, or which might have inured, to benefit of the Insured.

## PILOTAGE AND TOWAGE CLAUSE

It is agreed that the insured may be required to enter into contracts with pilots or tug/towboat owners where the insured is required to waive rights of recovery in whole or part.

## REACTIVATION CLAUSE

It is a condition of theses insurance that if the Vessel is laid-up for a period of more than ninety (90) days, the Vessel shall not depart the berth or place of lay-up (except for the purpose of moving under tow to another lay-up berth or location in the same port or general area) prior to a reactivation survey.

## OWNER'S LIMITATION CLAUSE

The so called "Other Than Owner", "As Owner" and/or "Other Insurance Clauses" contained in this contract shall be deemed deleted as required by contract.

Notwithstanding the above, if claim is made by anyone other than the owner and/or operator of the vessel(s) insured hereunder, such person or entity shall not be entitled to a broader scope of coverage than would the owner and/or operator had claim been made by the owner and/or operator as an Insured hereunder.

## CONTRACTUAL LIABILITY CLAUSE

It is understood and agreed that the coverage afforded under this contract is extended to insure the liability of the Insured arising out of hold harmless and/or indemnity agreements contained in such contracts as have been or may be entered into by the Insured for the furnishing of vessel and/or other services.

## AUTOMATIC ACQUISITION CLAUSE

This Contract is extended to cover automatically any vessel(s) which the Insured (and/or affiliated subsidiary, or interrelated companies) may purchase, bareboat charter or acquire provided that the Insured will notify Underwriters as soon as possible after each purchase, bareboat charter or acquisition and pay an additional premium from the date of each purchase, bareboat charter or acquisition.



Dual Corporate Risks

## GENERAL CONDITIONS APPLICABLE TO ALL SECTIONS

### LOCAL REINSURANCE CLAUSE

This Contract shall also apply as a reinsurance of local company(s), at no additional cost to Insurers hereon, where it is deemed a requirement by law of the Country in which operations are situated that insurance(s) be placed locally.

Any reinsurance requirements shall replicate original placement, with liberty to issue a separate Market Reform Contract / Reinsurance Policy to local Insurers as maybe required.

Premium :

Allocation of premium to be advised to Contract Leader only. Premium payment shall be as per main Market Reform Contract plus 60 days.

In view of the above, the Specific Conditions and General Conditions shall be amended as follows. Furthermore any reference to Insured, Insurers and Insurance shall be amended to Reinsured, Reinsurers and Reinsurance as applicable.

### SPECIFIC CONDITIONS

Subject to the express terms of this reinsurance, to indemnify the Reinsured(s) in respect of settlements or settlement decisions made under the original Contract *INSERT ORIGINAL CONTRACT POLICY NUMBER.*

### GENERAL CONDITIONS

Claims Control Clause and Simultaneous Settlements Clause as follows :

### CLAIMS CONTROL CLAUSE

Notwithstanding anything herein contained to the contrary, it is a condition of this reinsurance that:

(a) The Reinsured shall, upon knowledge of any circumstances which may give rise to a claim hereunder, advise the reinsurers as soon as possible;
(b) The Reinsured shall furnish the Reinsurers with all information available respecting such claim or claims;
(c) The Reinsurers shall have the sole right to appoint adjusters and/or representatives acting on their behalf to control all negotiations, adjustments and settlements in connection with such claim or claims.

### SIMULTANEOUS SETTLEMENTS CLAUSE

Reinsurers agree to pay their share of any loss hereon simultaneously with insurers participating in the original insurance.

### IN – REM ENDORSEMENT

It is agreed that any loss, otherwise covered by this contract, shall be considered covered thereby even though asserted by an action 'In-Rem' instead of action 'In-Personam', all limitations, exclusions and other provisions of the contract shall be applicable to this endorsement.



Dual Corporate Risks

**Attaching to and forming part of Policy Number**

**THIS ENDORSEMENT MODIFIES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED ENDORSEMENT**

Underwriters agree that, if required by written contract, any person, firm or organisation is included as an Additional Insured but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by the named Insured and only to the extent required under said written contract.

This insurance applies separately to each Insured against whom claim is made or suit is brought except with respect to Underwriters limits of liability.

The inclusion of any person, firm or organisation as an Insured shall not affect any right which such person, firm or organisation would have as a claimant if not included.

CGU00M

**Attaching to and forming part of Policy Number**

**THIS ENDORSEMENT MODIFIES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OF SUBROGATION ENDORSEMENT**

Underwriters agree to waive their rights of subrogation against any principal where waiver is required by written contract but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by the named Insured and only to the extent required under said written contract.

CGU00L

**U.S.A. AND CANADA ENDORSEMENT**
**FOR THE INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE 29TH JANUARY, 2004 (USCAN B)**

This contract is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons exclusion Clause 10th November, 2003 (RACCBE). The inclusion of RACCBE in this contract is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the United States of America, or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession of the United States of America, province or territory of Canada. Further, any such finding shall not alter the enforceability of RACCBE under the laws of any other state, territory, district, commonwealth or possession of the United States of America, or any province or territory of Canada, to the fullest extent permitted by applicable law.



Dual Corporate Risks


## ADDITIONAL / RETURN PREMIUM CLAUSE

It is understood and agreed that all Additional / Return premiums transacted hereon during the currency of this contract shall be balanced with a year end adjustment / contract endorsement, at expiry of this contract. The balance amount due and payable to either Underwriters or the Insured shall be settled within 60 days of expiry of this contract.

It is understood and agreed that if considered material either Underwriters or the Insured have the right to elect that any specific additional or return premium may be settled outside the terms of this agreement. Such elected transactions shall be specifically noted on the relevant contract endorsement.

## DEFERRED PAYMENT OF PREMIUM CLAUSE

Notwithstanding anything herein to the contrary the premium or consideration for the insurance is payable in instalments.

RKH Specialty, Agents for the Insured, are specially authorised until further notice to receive payment on behalf of the underwriters, of such instalments. In the event of any instalment not being received by the due date, this insurance may be cancelled in accordance with the provisions of the Premium Payment Clause LSW3001 as attached.

In the event of a total loss covered hereunder all future instalments shall immediately become due and payable and the underwriters shall be entitled to take credit thereof.

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.
15/09/10
JL2010/005

## JOINT LIABILITY COMMITTEE WAR AND TERRORISM EXCLUSION CLAUSE

This Contract excludes any actual or alleged liability, costs or expenses arising directly or indirectly out of any one or more of the following:

(a)   war, civil war, revolution, rebellion, insurrection or civil strife arising therefrom, or any hostile act by or against a belligerent power;

(b)   confiscation or expropriation;

(c)   capture, seizure, arrest, restraint or detainment and the consequences thereof or any attempt thereat;

(d)   any terrorist act or any person(s) acting maliciously or from a political motive;

(e)   strikers, locked-out workmen, or persons taking part in labour disturbance, riots or civil commotions;

(f)   derelict mines, torpedoes, bombs or other derelict weapons of war.

JL2002/002


Dual Corporate Risks


## INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the state of Louisiana

Subject to the Underwriters' rights set forth above:

(a)   It is further agreed that the Assured may serve process upon any senior partner in the firm of:

**Mendes & Mount (Attorneys), 750 Seventh Avenue, New York, N.Y. 10019-6829**

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)   The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)   Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

**If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.**

CL355 (Amended)



Dual Corporate Risks

 

IUA 09-054 (FATCA)

For contracts incepting on or after 1/7/2014

## Foreign Account Tax Compliance Act ("FATCA")

Each (Re)Insurer hereby acknowledges the requirements of Sections 1471-1474 US Internal Revenue Code of 1986, as amended, and the Treasury regulations and other guidance issued from time to time thereunder ("FATCA") and the obligation of each of them to provide to the Broker [RKH Specialty] a valid Internal Revenue Service ("IRS") Form W-8BEN-E, W-9 or other documentation meeting the requirements of the FATCA regulations to establish they are not subject to any withholding requirement pursuant to FATCA (the "Required Documentation").

Furthermore:

a) If a (Re)Insurer becomes non-compliant with FATCA during the contract period or has not provided the Broker with the Required Documentation 14 days prior to any premium due date, the Withholding Agent (as defined in U.S. Treasury Regulation Section 1.1471-1(b)(147)) shall withhold 30% of the premium (to the extent all or a portion of that premium is subject to withholding pursuant to FATCA) due to that (Re)Insurer under this contract on that premium due date and shall promptly notify that (Re)Insurer via the Broker.

b) The withholding of premium by virtue of (a) above shall not be, and shall not be treated by the (Re)Insurer as a breach of any premium payment condition, warranty or other clause whether or not entitling the (Re)Insurer to cancel, terminate or restrict this contract, refuse, restrict or delay payment of any claim or invoke any interest, penalty or other late payment provision. The (Re)Insurer shall be liable under this contract as if no such withholding had been made.

c) The (Re)Insurer shall not recoup sums withheld under (a) above by deducting equivalent sums from any payments due to the (Re)Insured or by set off against any other sums owed by the (Re)Insurer and any general or contractual right of set-off enjoyed by the (Re)Insurer is hereby varied and qualified to that extent.

d) Where premium is withheld in error, has not yet been paid to the IRS and the underwriter has been paid only the net premium following such withholding, the broker will cooperate with the (re)insurer to process the requisite refund.

IUA09-054 (FATCA)

**10 November 2014**



Dual Corporate Risks

 
## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NOT PURCHASED CLAUSE

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

LMA5219
12th January, 2015


Dual Corporate Risks



## PREMIUM PAYMENT CLAUSE

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non payment of premium only the following clause will apply.

The (Re)Insured undertakes that premium will be paid in full to (Re)Insurers within 60 days of inception of this contract (or, in respect of instalment premiums, when due).

If the premium due under this contract has not been so paid to (Re)Insurers by the 60th day from the inception of this contract (and, in respect of instalment premiums, by the date they are due) (Re)Insurers shall have the right to cancel this contract by notifying the (Re)Insured via the broker in writing. In the event of cancellation, premium is due to (Re)Insurers on a pro rata basis for the period that (Re)Insurers are on risk but the full contract premium shall be payable to (Re)Insurers in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this contract.

It is agreed that (Re)Insurers shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker. If premium due is paid in full to (Re)Insurers before the notice period expires, notice of cancellation shall automatically be revoked. If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

30/09/08
LSW3001

Notice of cancellation in writing for the purposes of the LSW 3001 shall be notice in writing to the Compliance Department, RKH Specialty, One Whittington Avenue, London, EC3V 1LE and delivered by registered post or received and acknowledged by the Compliance Department. The notice will only be accepted if the risk is properly identified, and includes at least the name of the Insured, the RKH Specialty contract reference number, the class of business and any other information that will enable the risk to be readily identified. Further for the avoidance of doubt, a notice of cancellation sent by email to RKH Specialty shall not constitute notice in writing for the purposes of the application of LSW 3001.



Dual Corporate Risks



## DIAMOND SERVICES CORPORATION

## SCHEDULE OF INSURED ITEM(S) AND PREMIUMS

### PERIOD : FROM DATE TO BE ADVISED

| INSURED ITEM | TYPE | BUILT | GRT | | HULL VALUE | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| MR GLENN | Tug | 1989 | 194 | | USD | |
| MR SCOTT | Tug | 1982 | 117 | | USD | |
| LADY LAFON | Tug | 1982 | 130 | | USD | |
| MELISA | Crewboat | 1979 | 40 | | USD | |
| MISS GRACE | Crewboat | 2001 | 99 | | USD | |
| MISS JULIE | Crewboat | 2002 | 99 | | USD | |
| MARY GRACE | Crewboat | 2004 | 96 | | USD | |
| PAULA KAY | Crewboat | 1998 | 99 | | USD | |
| DISCOVERY | OSV | 1974 | 1,405 | | USD | |
| KRISTIN GRACE | OSV | | 98 | | USD | |
| DIAMOND DREDGE #6 | Dredge | 1957 | 341 | | USD | |
| DIAMOND DREDGE #8 | Dredge | 1968 | 698 | | USD | |
| DIAMOND DREDGE #9 | Dredge | 1975 | 409 | | USD | |
| D-10 | Spud Barge | 1982 | 422 | | USD | |
| LAFITE DREDGE | Dredge | 1975 | 4,107 | | USD | |
| RIG RUNNER | Spud Barge | 1975 | 181 | | USD | |
| TEMAN | Spud Barge | 1971 | 167 | | USD | |
| SB-4 | Spud Barge | 1989 | 6,030 | | USD | |
| D-85 | Lay Barge | 1981 | 1,641 | | USD | |
| LAY BARGE No.5 | Lay Barge | 1956 | 437 | | USD | |
| DIAMOND JIM | Derrick Barge | 1991 | 1,336 | | USD | |
| HAWKEYE | Deck Barge | 1993 | 1,571 | | USD | |
| MMI-II | Deck Barge | | | | USD | |
| SF 2200 | Crane Barge | 1966 | 1,650 | | USD | |
| HOR 100 | Crane Barge | 2000 | 820 | | USD | |
| FANTASTIC DIVER | Hopper Barge | | 100 | | USD | |
| DIAMOND 100 | Hopper Barge | 2008 | 764 | | USD | |
| DIAMOND 200 | Hopper Barge | 2008 | 764 | | USD | |
| DIAMOND 300 | Hopper Barge | 2009 | 764 | | USD | |
| DIAMOND 400 | Hopper Barge | 2009 | 764 | | USD | |
| DIAMOND 500 | Hopper Barge | 2008 | 764 | | USD | |
| DIAMOND 600 | Hopper Barge | 2008 | 764 | | USD | |
| LA9429FC | Skiff | | 5 | | USD | |
| LA2118AT Teal | Skiff | | | | USD | |
| LA8116EY | Airboat | | | | USD | |
| GRADY WHITE | Pleasure Craft | 2001 | 25 | | USD | |
| LA2116AT | Mud Boat | | 5 | | USD | |
| LA3278ED | Mud Boat | 1997 | 5 | | USD | |
| MISS GRACIE | Pleasure Craft | 1976 | 2,577 | | USD | |
| LA4321FR | Pleasure Craft | | 10 | | USD | |
| LA5035Ed | Pleasure Craft | | 5 | | USD | |

| ADDITIONAL RATING DETAILS (IF APPLICABLE): | None. |
|---|---|

| PREMIUM GRAND TOTAL: | | INCLUDED |
|---|---|---|

## DUAL
Dual Corporate Risks

 
## INFORMATION

As per Underwriting Submission 2018, which seen and noted by Underwriters.

 

---

## SECURITY DETAILS

---

### (RE)INSURERS LIABILITY CLAUSE

**(Re)Insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333



Dual Corporate Risks


**ORDER HEREON:**      100% of 100%.

**BASIS OF
WRITTEN LINES:**      Percentage of Whole.

**SIGNING
PROVISIONS:**       In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the re(insurers).

However:

a)   in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b)   the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.


Dual Corporate Risks

## ATTACHING TO BINDING AUTHORITY UMR: B0180MA1702405

100.0000%    Dual Corporate Risks, 107 – 112 Leadenhall Street, London EC3A 6AF on behalf of the following security:

| SIGNED LINE | UNDERWRITERS |
|---|---|
| 70.000% | Lloyd's Syndicate NVA 2007 |
| 6.5714 ~~15.000%~~% | Lloyd's Syndicate SKD 1897 |
| 12.857 ~~15.000%~~% | Lloyd's Syndicate 4711 ASP |
| 3.5715% | LLOYD'S SYNDICATE 1200 AMA |
| 100.0000% | Lloyd's |

DUAL Aqua

A trading name of DUAL Corporate Risks Limited
For and on behalf of certain syndicates at Lloyd's
As granted under the binding Authority
UMR: B0180MA1802405

M E L I 8 0 0 1 8 4



9.3.18

Please note that RKH Specialty ("RKHS") and Dual Corporate Risks ("DCR") are ultimately owned by the same parent company, Hyperion Insurance Group Limited. Both RKHS and DCRL operate as separate entities and are individually authorised and regulated by the Financial Conduct Authority who require firms to have effective procedures in place to manage potential conflicts of interest that may arise in the course of their business activities.

RKH Specialty
One Creechurch Place,
London EC3A 5AF
United Kingdom

T +44 (0)20 7397 4400
www.rkhspecialty.com


**RKH Specialty**

Cobbs Allen
909 Poydras Street, Suite 2260A
New Orleans, 70112, Louisiana
United States of America

Date: 29th April, 2019 ,

## ADDENDUM TO CONFIRMATION OF (RE)INSURANCE

Dear Sirs,

**INSURED:** DIAMOND SERVICES CORPORATION
**POLICY NUMBER:** MA1805141
**ENDORSEMENT:** 006

Further to your instruction on the above captioned account, please find enclosed our Addendum to Confirmation of (re)insurance in respect of the above risk being a full copy of our Endorsement.

We advise you to check the documentation we send you in relation to each placement we make and satisfy yourself that it is entirely in accordance with your understanding and instructions. Anything at variance with your understanding and instructions should be advised to us immediately. Otherwise, we will assume that the documentation is in order.

### Duty of Disclosure

We take this opportunity to remind you that there is a legal obligation upon us to ensure that policyholders and intermediaries alike are made aware or reminded of the duty of disclosure and the consequences of its breach.

The policyholder must disclose to insurers any fact or circumstance which is known to them (or which ought to be known to them or the proposer in the ordinary course of their business, and which may include information known to you) and which is material to the risk.

The duty of disclosure applies before the contract of insurance is concluded and may continue for the duration of the contract including any extension or amendment to the insurance contract. Failure to disclose relevant information may allow insurers to cancel coverage back to inception (ab initio). Insurers would also seek to secure reimbursement of any claims already paid. The duty of disclosure and the consequences of its breach may vary to a limited degree from the foregoing dependent upon the law(s) applicable to the insurance contract.

Please contact us immediately for assistance if you do not fully understand this duty of disclosure, if you are unsure whether information may be material or if it comes to your attention that full and accurate information may not have been disclosed.

RKH Specialty Limited, part of the Hyperion Insurance Group, is authorised and regulated by the Financial Conduct Authority in respect of general insurance business. Registered Wales under company registration number 7142031. Registered Office: One Creechurch Place, London EC3A 5AF.

**EXHIBIT 2**
tabbies

RKH Specialty
One Creechurch Place,
London EC3A 5AF
United Kingdom

T  +44 (0)20 7397 4400
www.rkhspecialty.com



## Important Conditions

Please note, failure to comply with, or failure to comply within a specified time period in relation to certain provisions may invalidate or reduce the amount recoverable under this insurance.

We trust you find the enclosed documentation in order.  Should you note that any part of the document is inaccurate please contact us immediately.

Yours sincerely

**for & on behalf of RKH Specialty**

*Authorised Signatory*

RKH Specialty Limited, part of the Hyperion Insurance Group, is authorised and regulated by the Financial Conduct Authority in respect of general insurance business. Registered in England and Wales under company registration number 7142031. Registered Office: One Creechurch Place, London EC3A 5AF.


## CONTRACT ENDORSEMENT

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | B0180MA1805141 |
| **ENDORSEMENT REFERENCE:** | 006 |
| **TYPE:** | LIABILITY INSURANCE |
| **INSURED:** | DIAMOND SERVICES CORPORATION |
| **PERIOD:** | With effect from 10th March, 2018 12.01 am, local standard time, at the address of the insured to 10th March, 2019 12.01 am, local standard time, at the address of the insured. |

### CONTRACT CHANGES

Underwriters hereby note and agree, with effect from 10th March, 2019, that the final vessel Utilization report is as attached with additional premium due as calculated below.

**ENDORSEMENT
EFFECTIVE DATE:**     10th March, 2019

**PREMIUM /
RATE:**

Additional premium due of USD          calculated as follows:

USD          x 260 % utilisation of all vessels = USD

USD          less USD          Deposit premium = USD

**INFORMATION:**     Vessel Utilization report as attached.

All other terms, clauses and conditions remain unaltered.

Dated: 23rd April, 2019.

Leading (re)insurer

**DUAL**
Dual Corporate Risks