UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DIAMOND SERVICES CORP             CIVIL ACTION NO.   6:20-CV-00101

VERSUS                            JUDGE JUNEAU

COBBS ALLEN & HALL OF             MAGISTRATE JUDGE WHITEHURST
LOUISIANA INC

**REPORT AND RECOMMENDATION**

Before the Court upon referral from the district judge is the Motion to Remand [Doc. 12] filed by the plaintiff, Diamond Services Corporation ("Diamond"). The motion is opposed by defendants Dual Corporate Risks, Ltd., Lloyds Syndicate NVA 2007; Lloyds Syndicate SKD 1897; Lloyds Syndicate 4711 ASP, and Lloyds Syndicate 1200 AMA (collectively, "defendants" or "Lloyds Syndicates") [Doc. 15], and Diamond filed a reply brief [Doc. 21]. For the following reasons, IT IS RECOMMENDED that the motion be GRANTED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The instant dispute arises out of the alleged failure to pay insurance premiums. Dual Aqua issued a marine protection and indemnity insurance policy, UMR "B0180MA1805141" ("Policy"), which insured Diamond's fleet of vessels from March 10, 2018 to March 10, 2019 ("Term"). It appears to be undisputed that an

agent named Burnett Tappel brokered the policy to Diamond. The premium owed on the policy was determined at the end of the term by calculating the aggregate percent utilization rate. Defendants alleges that at the end of the term, Diamond had an aggregate utilization rate of 260%, amounting to $660,000 in owed premium, which Diamond refused to pay. Diamond disputed the formula for the premium in the policy and filed a state court action in the 16th Judicial District Court for the Parish of St. Mary, Louisiana on September 19, 2019, seeking a judicial declaration that the policy is ambiguous. The state court petition named Dual Aqua, the Lloyds Syndicates, and Cobbs, Allen, and Hall of Louisiana ("CAH La.") as defendants. CAH La. is a Louisiana corporation.

Dual Aqua and the Lloyds Syndicates removed the matter to this Court based on diversity jurisdiction, arguing that all defendants are diverse in citizenship, except for CAH La., which was improperly joined. Thereafter, Diamond filed an amended complaint, naming First Insurance Agency, Inc. ("First Insurance"), an inactive Louisiana corporation, and Cobbs Allen & Hall, Inc., an Alabama corporation, as additional defendants. Diamond then filed the instant motion to remand on grounds that this Court does not have complete diversity over the matter because First Insurance and CAH, La. are Louisiana defendants. Defendants oppose the instant

motion to remand, asserting that First Insurance and CAH La. were improperly joined, and therefore, their citizenship should be ignored for purposes of determining diversity jurisdiction. The issues have been briefed and are now ripe for review.

**Removal standard**

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute. See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010); *Howery v. Allstate Ins., Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question, 28 U.S.C. § 1331, and those in which the amount in controversy exceeds $75,000 and the parties are citizens of different states, 28 U.S.C. § 1332.

For that reason, a suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court jurisdiction establishes otherwise. *Howery v. Allstate*, 243 F.3d at 916. Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). The removal statute must therefore be strictly construed, and any doubt about the

propriety of removal must be resolved in favor of remand and against federal-court jurisdiction. *Carpenter v. Wichita Falls*, 44 F.3d at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Howery v. Allstate Ins. Co.*, 243 F.3d at 919; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). When an action is removed from state court, as this suit was, the removing party bears the burden of proving that federal-court jurisdiction exists. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Accordingly, the defendants, as the removing parties, have the burden of establishing that this Court has subject-matter jurisdiction.

The removing defendants argue that the citizenship of CAH La. and First Insurance should be ignored because they were improperly joined as defendants in the lawsuit. Just as the removing defendants bear the burden of demonstrating that this Court has jurisdiction, they also bear the burden of establishing that CAH La.

and First Insurance were improperly joined. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990). "The diversity statute requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as one of the defendants." *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). "If, however, the removing party can show that a non-diverse defendant has been improperly joined to defeat diversity jurisdiction, the case may be removed." *Murray v. General Motors, L.L.C.*, No. 11-60618, 2012 WL 2005018, at *2 (5th Cir. June 6, 2012).

The doctrine of improper joinder is a narrow exception to the rule of complete diversity. *McDonald v. Abbott Labs*, 408 F.3d 177, 183 (5th Cir. 2005). There are two ways to demonstrate improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. RR Co.*, 385 F.3d 568, 573 (5th Cir. 2004). When the latter form of improper joinder is involved, the removing party must demonstrate that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The removing party's burden of proof is clear and convincing evidence. *Grassi v. Ciba-Geigy Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990). If there is

no reasonable basis for recovery, the court may conclude that a plaintiff's decision to implead the nondiverse defendant was improper. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th. Cir. 2011). Typically, in determining the propriety of an improper-joinder claim, a court looks to the face of the plaintiff's pleadings and conducts an analysis using the framework of Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Branden v. Paschen*, 2019 LEXIS 67749, at *4 (E.D. La. Apr. 22, 2019). If a plaintiff has omitted or misstated discreet facts in its complaint that would determine the viability of the removal action, however, the court may pierce the pleadings and conduct a summary inquiry using outside evidence. *Smallwood*, 385 F.3d at 573.

At issue when conducting a summary inquiry is the type of evidence a court can consider. "Summary judgment type" evidence is evidence that a court would consider when evaluating a motion for summary judgment. A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). *Velasquez v. EAN Holdings, LLC*, 2018 WL 5924037, at *4 (N.D. Tex. Nov. 13, 2018), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements. *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997);

˘6˘

*Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976) ("Evidence inadmissible at trial cannot be used to avoid summary judgment.") ); *see also Anderson v. Dallas Cty.*, 2007 WL 1148994, at *3 (N.D. Tex. Apr. 18, 2007) (noting "for example, while an affidavit has limited admissibility at trial, it is sufficient evidence to support or defeat a motion for summary judgment even though inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court").

Rule 56(c) of the Federal Rules of Civil Procedure provides the following:

**Rule (c) Procedures.**

**(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

District courts within the Fifth Circuit have held that the failure of a party to notarize an original affidavit renders that affidavit incompetent evidence for summary judgment. *See Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 738 (E.D. La. 2012), *citing Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1305–06 & n. 9 (5th Cir.1988) (noting that an unsigned affidavit which failed to state that it was made under penalty of perjury was properly stricken from consideration of summary judgment motion). Furthermore, an affidavit can meet the criteria for "unsworn affidavits" contained at 28 U.S.C. §1746, but only if the person making the verification states that the declaration is made "under penalty of perjury," 28 U.S.C. §1746. An affidavit that does not meet either of these requirements is inadmissible.

Federal Rule of Evidence 901 provides for methods of authentication. *See, e.g., Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 599–600 (5th Cir. 2015), <u>as revised</u> (Mar. 22, 2016), *citing* Fed.R.Evid. 901(b) (listing multiple methods of authentication); *see also In re McLain,* 516 F.3d 301, 308 (5th Cir.2008) (noting that "Rule 901 does not limit the type of evidence allowed to authenticate a document.... [but] merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be") (citation omitted). Rule

901 does not preclude authentication by affidavit or deposition. *See Rust v. Bank of Am., N.A.,* 573 Fed.Appx. 343, 345 (5th Cir.2014) (allowing a document to be authenticated under Rule 901(b)(1) by an affiant with knowledge swearing the document to be true and correct); Fed.R.Evid. 901(b).

Considering the foregoing, the undersigned now addresses the arguments of the parties.

## II. ANALYSIS

The issue before the Court at this time is whether the non-diverse defendants – CAH La. and First Insurance – are improperly joined. If they are, their citizenship is ignored for purposes of determining diversity jurisdiction. The result is that, if this Court determines CAH La. and First Insurance were improperly joined, this Court will have complete diversity over the matter, and the motion to remand should be denied. If this Court determines that these entities were not improperly joined, these entities will remain in the lawsuit, and the matter must be remanded. Importantly, the burden is on defendants as the removing parties to establish that First Insurance and CAH La. are improperly joined.

With respect to the Cobbs Allen entities, the Court must determine which Cobbs Allen entity – either CAH La. or CAH, Inc. – is the proper defendant. Defendants argue that Diamond's complaint on the issue of which Cobbs Allen entity is the proper defendant in this lawsuit is unclear, and that a summary inquiry is therefore necessary. The Court agrees. Although Diamond initially named only CAH La. as a defendant, it amended its complaint to add CAH, Inc. as a defendant. Specifically, Diamond's First Supplemental And Amended Complaint for Declaratory Judgment alleges that the relevant policy was issued "through their agent, Cobbs, Allen, & Hall of Louisiana, Inc. and/or First Insurance Agency, Inc. dba Cobbs Allen of New Orleans and/or Cobbs, Allen, & Hall, Inc." *R. 17, at ¶20.* As no specific arguments are made in the Complaint as to which Cobbs Allen entity issued the policy, reference to outside evidence is necessary. Defendants argue that the key to determining the proper Cobbs Allen entity with liability is in identifying the agent who sold the policy to Diamond and determining which Cobbs Allen entity that agent was associated with at the time the policy was sold.

In defendants' Notice of Removal, they allege that Burnett Tappel, III issued the policy in question to Diamond. Defendants attach a copy of the Commercial Insurance Application identifying Tappel as the insurance agent to their opposition

˘10˘

to the motion to remand. Defendants also attach a Joint Marketing and Licensing Agreement, dated July 18, 2016, which was executed by and between CAH, Inc., First Insurance, and Tappel. The Agreement grants First Insurance the right and license to use the name "Cobbs Allen" in connection with the operation of its business. The only "Cobbs Allen" entity referenced in the agreement is CAH, Inc., which is identified as an Alabama corporation.

First Insurance is an inactive company, of which Tappel was the sole shareholder and president. According to the defendants, Tappel eventually sold First Insurance to CAH, Inc. and became an employee of CAH, Inc. Defendants argue that First Insurance no longer has any assets or property, and no longer exists as a corporate entity. Thus, defendants argue there is no reasonable right of recovery against First Insurance, and for this reason, First Insurance was improperly joined. The undersigned need not determine whether Diamond can recover against First Insurance, however, because even if it can, defendants fail to carry their burden of showing that CAH La. was improperly joined, and, therefore, remand is appropriate regardless of whether First Insurance remains in the lawsuit.

Defendants rely on *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) in support of their argument that a plaintiff's filing of claims

against multiple entities with similar names requires the Court to pierce the pleadings and conduct a summary inquiry into which entity is the proper defendant in the lawsuit. Defendants argue that *Cuevas* addresses a factually similar situation in which two legally distinct defendants with easily confused names were sued by the plaintiffs after the foreclosure on their home. When the Texas homeowners received notices of default from a "Countrywide Home" entity, they sued Countrywide Home Loans of Texas, Incorporated – a Texas citizen; Countrywide Home Loans, Incorporated – a citizen of New York and California; and BAC Home Loans Servicing, LP, which was formerly known as Countrywide Home Loans Servicing, LP – a North Carolina citizen. *Cuevas*, 648 F.3d at 245-46. The collective "Countrywide Home" defendants filed for removal on the grounds that Countrywide Home Loans of Texas – the only in-state defendant – had no role in the foreclosure events, and, therefore, the Texas homeowners had no reasonable recovery against Countrywide Home Loans of Texas, rendering it improperly joined. *Id.* The Fifth Circuit overruled the district court's finding that Countrywide Home Loans of Texas was properly joined. In doing so, the Fifth Circuit followed the "paper trial" to determine which "Countrywide Home" entity originated and/or serviced the loans affecting the Texas homeowners. *Id.* at 250.

˘12˘

In *Cuevas*, the following evidence was provided by the Countrywide Home entities included the following:

> The deeds of trust list First Magnus Corporation as the lender that originated the loan. To support its contention that Countrywide Home Loans of Texas does not service loans and has never serviced loans, the defendants offered the affidavit of Devra Lindgren, Vice–President and Assistant Corporate Secretary of Bank of America, N.A. Lindgren testified from her personal knowledge of the structure of Bank of America, its subsidiaries, and its affiliates—including Countrywide entities such as Countrywide Home Loans of Texas—and her review of relevant business records. Lindgren testified that the Cuevases' loan was serviced by Countrywide Home Loans Servicing LP—which later changed its name to BAC Home Loans Servicing, LP—at all times relevant to the complaint. Lindgren further testified that Countrywide Home Loans of Texas was created to conduct the mortgage origination business of Full Spectrum Lending, Inc. Finally, she averred that Countrywide Home Loans of Texas did not originate the Cuevases loan, nor did it ever service loans for the Cuevases or anyone else.

*Id.*

Thus, the "paper trail" in *Cuevas* consisted of bank documents as well as an affidavit of a bank vice president, wherein the affiant testified as to her personal knowledge surrounding the origination and service of the loan in question. Based on this evidence, the Fifth Circuit held that, despite having a similar name, Countrywide Home Loans of Texas was not involved in the subject loan servicing, and, therefore, the Texas homeowners had no reasonable recovery against it. The

Fifth Circuit then reversed the district court's holding that Countrywide Home Loans of Texas had been properly joined. *Id.*

Unlike in *Cuevas*, in the instant case, while the documents presented to the Court appear to confirm that Tappel was an agent of CAH, Inc. at the time the policy in question was sold to Diamond, the undersigned is unable to consider the evidence presented, because the documents in question are unauthenticated, and therefore, not proper summary judgment type evidence. The only evidence that has been submitted by defendants are contracts and agreements, none of which have been authenticated or otherwise shown to be competent summary judgment type evidence. No accompanying affidavits or deposition testimony has been presented, and there is no way for the undersigned to confirm that the contracts presented are what they purport to be. While authenticating evidence from any employee of the Cobbs Allen entities could have clarified the matter for the Court, none was provided. Therefore, this Court is unable to consider the evidence provided. *See also Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 987 (5th Cir. 2016) (where only unsigned, handwritten list of contents from a daycare center produced during discovery were provided, court held the documents were unauthenticated and, thus, improper as summary judgment evidence).

The undersigned is mindful that the improper joinder doctrine is a narrow exception to the complete diversity rule, that the removal statute must be strictly construed, and that any doubt about the propriety of removal must be resolved in favor of remand. Here, Diamond has alleged liability against CAH La., and the burden is on the defendants to establish that CAH La. was improperly joined. For the reasons stated in this report, the undersigned concludes that defendants have failed to carry that heavy burden. Because the undersigned concludes CAH La. was not improperly joined, the citizenship of CAH La. must be considered. As CAH La. is not completely diverse from the plaintiff, the matter must be remanded.

### III.   CONCLUSION

Considering the foregoing, IT IS RECOMMENDED that the Motion to Remand [Doc. 12] filed by the plaintiff, Diamond Services Corporation ("Diamond") be GRANTED, and that this matter be remanded to the Sixteenth Judicial District Court for the Parish of St. Mary, State of Louisiana.

Under the provisions of 28 U.S.C 636(b)(1)(C) and Fed.R.Civ.P 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being

served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 14th day of July, 2020.

*[signature]*
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE